**Jerry SEXTON, Defendant Below, Appellant,**

**v.**

**The STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

April 5, 1967.

James P. Kipp, Asst. Public Defender, for appellant.

Jay H. Conner, Deputy Atty. Gen., for appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

This appellant, Jerry Sexton, seeks reversal of a conviction in the Superior Court of robbery. He contends (1) that prejudicial error occurred at the trial when the prosecuting attorney asked a leading question, an objection to which was sustained,

and another allegedly improper question which was never answered; and (2) that the Court below erred in refusing to allow appellant to show that his original apprehension was illegal.

Appellant was jointly indicted with his brother Donald for the robbery of a liquor store in the late evening of July 3d, 1964. Prior to the trial, the State entered a nolle prosequi as to Donald. Some time after the indictment was returned the appellant was arrested in Maryland and, after serving a prison sentence there, was returned to Delaware.

At the trial, the victim of the robbery identified Jerry Sexton as the person who had participated in the crime by holding a gun pointed at the victim and by taking the money in the cash register. There was no corroboration by any other witness of that identification. Some of the victim's testimony on cross-examination indicated that his identification may have been based solely on appellant's height and weight. At the trial, however, the witness did point to the defendant as his assailant, although Donald, who closely resembles Jerry, was sitting near his brother. During the course of re-direct examination, the prosecuting attorney asked this question: "Mr. Kelly, you just stated that when a gun is pointed at me there is something that came back to me when I saw that face again. So you based your subsequent identification on more than height and weight, did you not? Didn't you also base it on his face?"

Objection was made and sustained on the ground that the question was leading. A little later the witness stated that he remembered Jerry when he saw his face.

■ It is argued that the mere asking of this leading question is prejudicial error justifying a reversal. The only authority cited on the point is State v. Boyd, 8 Terry 370, 91 A.2d 471, which we think is not pertinent here because it deals with inadmissible *evidence* heard by the jury. Here the leading question was not answered; the

admissibility of the expected answer is not questioned; only the form of the question was objectionable. We think the episode was of little importance, as did the trial Judge. We have no reason to believe that the form of the question was anything more than an unintentional mistake, which had no prejudicial effect.

Later, Donald Sexton was called to the stand by the State. He was fully cautioned concerning his right to refuse to answer any questions that might be self-incriminating. He testified that he had not been with Jerry on July 3d, 1964 and, while he knew Detective Brierly, he did not recall talking to him on July 18th, 1964. He was then asked this question: "Did you ever tell Detective Brierly that you were involved in this robbery with Jerry Sexton"? The witness refused to answer.

■ Appellant contends that the answer (if affirmative) would have been inadmissible under State v. Frantz, 2 W.W.H. 225, 121 A. 652, that the question should not have been asked and that the asking of it rendered the trial unfair since the jury may have drawn some adverse inference from it. To support that argument, he cites People v. Robarge, 111 Cal.App.2d 87, 244 P.2d. 407, and People v. Figuieredo, 130 Cal.App.2d 498, 279 P.2d 200. Without disagreeing with the rulings in those cases, we simply say that the wrongful episodes in them were obviously prejudicial to the defendants, whereas we cannot believe that the mere asking of this unanswered question had any real significance in this case or that it was sufficiently prejudicial as to warrant a reversal. Especially is this true in the light of the clear instruction to the jury to decide the case solely on the testimony in the record.

We are not to be understood, however, as approving the intentional use of trial tactics designed to suggest guilt by association. We have no knowledge of what counsel expected to prove through Donald had he seen fit not to rely upon his constitutional right; likewise, we have no

knowledge of whether the prosecuting attorney previously knew that Donald would exercise that privilege. We are accordingly not suggesting the existence of an actual intention to employ this sort of tactic in this case. Our present purpose is simply to make plain our disapproval of such tactics.

Finally, appellant contends that all the State's evidence should have been suppressed in accordance with a motion made at the close of State's case. At that time, counsel asked leave to call a witness to the stand to prove the following matters to justify the suppression: (1) some time after the robbery, defendant was riding in a car in Maryland, the driver of which was arrested for speeding; (2) while the driver and the defendant were in a building paying the fine, the police searched the car and found a gun; (3) the Maryland officers knew that Delaware police were looking for a person of defendant's description who might be carrying a gun and they accordingly called in the Delaware police; (4) thereafter the complaining witness in this case was shown a single photograph of the defendant, from which he identified the defendant as one of the robbers. Counsel's theory was that defendant's presence at the trial was the result of an illegal detention and seizure in Maryland, and that the finding of the gun was the basis for his coming ultimately into the custody of the Delaware police; in other words, defendant's presence before the trial Court was the result of illegal activity of the Maryland police, wherefore "the whole procedure should fall". This theory is again pressed before us.

■ The argument is a novel one, unsupported by any citation of pertinent authority, and we know of no case which has gone so far. This is not a situation of attempting to introduce into evidence objects obtained by an unreasonable search or seizure, for no such evidence was offered. Neither the gun nor the photograph were offered by the State; in fact, its whole case rested upon the testimony of the victim. There is no indication in the record that the victim's identification of appellant was the result of anything other than his own memory; he was not asked whether the photograph had anything to do with his identification testimony. There is likewise nothing to suggest that the photograph was in the possession of the police as the result of any unlawful search. We think that any illegality connected with defendant's arrest in Maryland has no bearing upon this case. To hold otherwise, would be to stretch the "evidentiary exclusion" rule beyond its intended scope. We hold that the Court below was correct in refusing to allow counsel to bring in these extraneous matters.

The judgment below will be affirmed.